IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| J.L. ROTHROCK, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | **AND RECOMMENDATION** |
| ) | |
| SPRINGS GLOBAL US, INC., ) | 1:08CV668 |
| ) | |
| Defendant. ) | |

This matter is before the court on a motion to dismiss by Defendant (docket no. 6). Plaintiff has responded in opposition to the motion. In this posture, the matter is ripe for disposition. The parties have not consented to the jurisdiction of the magistrate judge; therefore, the motion must be dealt with by way of recommendation. For the following reasons, it will be recommended that Defendant's motion be denied.

BACKGROUND

Plaintiff has sued Defendant alleging, among other things, breach of a written contract between the parties in which Defendant agreed to indemnify Plaintiff for loss or damage to Plaintiff's property–specifically, Plaintiff's trailers that Defendant sometimes used to transport goods. On this motion to dismiss, Defendant contends that the contract containing the indemnification clause is no longer in effect due to a subsequent written contract between the parties that contained a merger clause nullifying all prior contracts related to its subject matter. For the following reasons,

I agree with Plaintiff that the first contract is still in force; therefore, Defendant is obligated to indemnify Plaintiff for any loss or damage to Plaintiff's property.

The following allegations are assumed to be true for the purposes of this motion. Plaintiff J.L. Rothrock, Inc. and Defendant Springs Global are both in the business of transporting goods. From time to time, the parties used tractor trailers that belonged to each other. (Compl. ¶ 5.) On February 7, 1996, the parties executed a written contract titled the "Equipment Interchange Agreement" (hereinafter the "EIA"). The EIA states that "[Plaintiff] shall occasionally utilize its own vehicle trailers and primarily utilize other equipment consisting of motor vehicle trailers owned and operated by [Defendant] by picking up shipments for and on behalf of [Defendant]. [Defendant] shall in some cases then deliver said loaded trailers." (EIA ¶ 1.)

In the EIA, the parties agreed to indemnify each other for any loss or damage that might occur during each party's use of the other party's equipment. (Compl. ¶ 6; EIA ¶¶ 2, 3.) More specifically, the terms of the EIA state that each party agrees to indemnify the other "against any and all . . . loss or damage to property emanating from [the other party's] use, possession, operation, or maintenance" of equipment owned or titled by the first party. (EIA ¶ 3.) The EIA also requires each party to obtain an insurance certificate naming the other party as a holder on an insurance policy having at least a $1 million combined coverage limit for the purpose of satisfying the indemnity obligations. (EIA ¶¶ 2-3.) The EIA further states that the

party using a piece of equipment would be responsible for performing repairs and maintenance on that equipment.  (*Id.* ¶ 4.)

The parties executed a separate, written contract in 2002 titled the "Transportation Contract."  The stated purpose of the Transportation Contract is the following:  "Whereas [Plaintiff] desires to provide contract carriage services and [Defendant] desires to use the contract motor transportation services of [Plaintiff], the parties have agreed to the following terms and conditions under which all transportation by [Plaintiff] for [Defendant] shall be performed."  (Transportation Contract, unnumbered paragraph 2.)  Furthermore, Section One of the Transportation Contract, titled "General Provisions," states:

> This Contract provides for specified services under the specified rates and conditions set forth herein. [Plaintiff] agrees to provide freight transportation and other services, and [Defendant] agrees to pay for such services and fulfil its other obligations in accordance with the provisions of this Contract. [Defendant] retains the right to ship freight via other providers of transportation services, and [Plaintiff] retains the right to serve other shippers.  Unless otherwise agreed, [Defendant's] freight may be commingled in [Plaintiff's] equipment with the freight of other shippers.

(Transportation Contract § I.)  The Transportation Contract goes on to set forth rates to be charged to Defendant for Plaintiff's shipments and sets forth each party's obligations with regard to Plaintiff's agreement to haul Defendant's products.

Unlike the EIA, the Transportation Contract contains no express provisions stating that the parties will use each other's trailers in shipping goods.  Addendum B to the Transportation Contract, however, provides that a detention fee for use of

-3-

trailers shall be paid at the rate of $25.00 for each day the trailers are in the possession of the utilizing party, with the exception of no charge for the first three days of possession. (*See id.* § IV, ¶ 7 & Addendum B.) Thus, the parties appear to agree, at the least, that the "detention fee" provision explicitly recognizes that Defendant was at times using Plaintiff's trailers.

Finally, the Transportation Contract contains a standard merger clause. Specifically, Paragraph 10 of Section VII of the Transportation Contract states as follows:

> This Contract represents the entire agreement and understanding between the parties hereto with respect to the services to be performed hereunder, and neither party has relied or will rely upon any representation or agreement of the other except to the extent set forth herein. *Any prior or existing agreements relating to the subject matter thereof shall be immediately terminated on the effective date of this Contract, first set forth above.* This Contract may not be amended or modified except in writing signed by a duly authorized representative of each party.

(Transportation Contract § VII, ¶ 10.) (emphasis added). The Transportation Contract became effective October 1, 2002. (*See* Transportation Contract § II.)

In the complaint, Plaintiff alleges that, at various times between June 4, 2004, and December 31, 2005, Defendant took possession of six of Plaintiff's trailers. (Compl. ¶ 8.) Plaintiff alleges that until October or December 2007, Defendant paid Plaintiff a daily detention fee for Defendant's use of those trailers pursuant to Addendum B in the Transportation Contract. (Compl. ¶¶ 7, 9.) Plaintiff alleges that after that time, even though Defendant stopped paying Plaintiff for the use of

-4-

Case 1:08-cv-00668-TDS-WWD   Document 14   Filed 03/13/09   Page 4 of 11

Plaintiff's trailers, Defendant did not return any of the six trailers to Plaintiff, nor has Defendant indemnified Plaintiff for their value. (Compl. ¶¶ 8, 10-11.) Plaintiff alleges that it has requested payment for the trailers and/or an accounting of the trailers' whereabouts multiple times from Defendant, but that Defendant has failed to provide either. (Compl. ¶¶ 11, 15.) Plaintiff alleges that Defendant's failure to return the trailers and failure to indemnify Plaintiff for their value constitutes a breach of the EIA. (Compl. ¶ 15.) Plaintiff alleges that it has been damaged "in the amount of the replacement cost of the six trailers."[1]  (*Id.* ¶ 17.)

Defendant has now filed a motion to dismiss Plaintiff's claim for breach of the EIA under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, based on Defendant's contention that the Transportation Contract terminated the EIA effective October 1, 2002, well before Defendant allegedly took possession of the trailers and failed to indemnify Plaintiff for their value.[2]

STANDARD OF REVIEW

In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir.

---

[1] As part of the breach of contract claim, Plaintiff also alleges that Defendant has breached Addendum B of the Transportation Contract by failing to pay Plaintiff a detention fee for each of the six trailers since "October–December 2007." (*Id.* ¶ 16.) Because Defendant does not move to dismiss the breach of contract claim as it relates to a breach of the Transportation Contract, this issue is not before the court.

[2] Defendant has also counterclaimed for breach of contract, conversion, and "money had and received." (*See* Answer, docket no. 8.)

1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C. 1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, is liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

Generally, the court looks only to the complaint itself to ascertain the propriety of a motion to dismiss. *See George v. Kay*, 632 F.2d 1103, 1106 (4th Cir. 1980). A plaintiff need not plead detailed evidentiary facts, and a complaint is sufficient if it will give a defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Bolding v. Holshouser*, 575 F.2d 461, 464 (4th Cir. 1978). This duty of fair notice under Rule 8(a) requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). As the Supreme Court has recently instructed, although detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted). With these principles in mind, the court now turns to the motion to dismiss.

DISCUSSION

Because this is a diversity case, I must first address which state's law applies to Plaintiff's breach of contract claim. On diversity jurisdiction, the court must apply

North Carolina's choice of law rules to determine which state's substantive law applies to Plaintiff's breach of contract claim. *Nas Surety Group v. Precision Wood Prods.*, 271 F. Supp. 2d 776, 780 (M.D.N.C. 2003). Under North Carolina's choice of law rules, the law of the state in which the last act occurred to form a binding contract applies to the contract. *Id.* Furthermore, where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, the contractual provision will generally be given effect. *Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980).

As to the Transportation Contract, the parties agreed that the Contract "shall be subject to and shall be interpreted in accordance with the laws of the State in which [Defendant] is domiciled." (Transportation Contract, VII, ¶ 11.) Plaintiff has alleged that Defendant is domiciled in South Carolina. (*See* Compl. ¶ 2.) Therefore, it appears that the substantive law of South Carolina governs the interpretation of the Transportation Contract. As to the EIA, it is not clear whether the last act necessary to the formation of the EIA occurred in South Carolina or North Carolina.[3] Since the substantive contract law of the two states does not differ in any significant way, either state's law of contracts will suffice. For simplicity's sake, I will apply South Carolina contract law to Plaintiff's breach of contract claim.

Under South Carolina law, "[t]he cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract

---

[3] Plaintiff is located in North Carolina, Defendant is located in South Carolina, and the parties appear to agree that they executed the EIA in one of these two states.

language." *Schulmeyer v. State Farm Fire & Cas. Co.*, 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003). "In construing terms in contracts, [courts] must first look at the language of the contract to determine the intentions of the parties." *C.A.N. Enters., Inc. v. S.C. Health & Human Servs. Fin. Comm'n*, 296 S.C. 373, 377, 373 S.E.2d 584, 586 (1988). "If [a] contract's language is clear and unambiguous, the language alone determines the contract's force and effect." *Schulmeyer*, 353 S.C. at 495, 579 S.E.2d at 134. Where the existence of an unambiguous contract is not in question, the construction of the agreement is a matter of law. *McMillan v. Gold Kist, Inc.*, 353 S.C. 353, 358, 577 S.E.2d 482, 484 (Ct. App. 2003). In such a case, "[e]xtrinsic language giving the contract a different meaning from that indicated by its plain terms is inadmissible." *C.A.N. Enters., Inc.*, 296 S.C. at 377, 373 S.E.2d at 586-87. With these principles in mind, I turn to Defendant's arguments on the motion to dismiss.

In support of the motion to dismiss, Defendant contends that to the extent that Plaintiff's breach of contract claim is based on a breach of the EIA, this claim fails because the merger clause in the Transportation Contract terminated the EIA, effective October 1, 2002. Defendant notes that under a plain reading of the merger clause in Section VII, Paragraph 10, the Transportation Contract terminated, effective October 1, 2002, any agreement, if that agreement (1) was a prior or existing agreement when the Transportation Contract was entered and (2) related to the subject matter of the Transportation Contract. Defendant contends that both

of these conditions are satisfied with respect to the EIA. Defendant notes that since the EIA was entered in 1996, it qualified as a "prior or existing agreement" under the Transportation Contract's terms. Defendant further contends that the EIA is "related to the subject matter" of the Transportation Contract.

I disagree with Defendant's latter argument and find that, as a matter of law, the EIA is not "related to the subject matter" of the Transportation Contract; therefore, the merger clause in the Transportation Contract does not render the EIA void. As Plaintiff notes, the Transportation Agreement deals exclusively with Plaintiff's transportation of Defendant's products. By contrast, the EIA deals exclusively with the parties' use of each other's equipment. The "Entire Agreement" clause of the Transportation Contract provides that the Transportation Contract "represents the entire agreement and understanding between the parties hereto with respect to the *services to be performed* hereunder . . . ." (Transportation Contract, ¶ 10.) As Plaintiff notes, the EIA does not relate to any *services* to be performed. Rather, the EIA relates only to the parties' use of each other's trailers and equipment. By contrast, the Transportation Contract addresses Plaintiff's transportation of Defendant's goods. As Plaintiff notes, the services to be performed are explicit and limited, with Plaintiff agreeing to provide freight transportation and with Defendant agreeing to pay for such services, and with each party being required to perform other, additional services. For instance, Plaintiff's other obligations are, among other things, to secure delivery appointments, to perform expedited service

on specified shipments, to make stop-offs for compensation, and to obtain all receipts for merchandise required by Defendant. (*Id.* § IV.) Defendant's other obligations are to tender a minimum of one shipment during the first year and to provide Plaintiff with a bill of lading. (*Id.* § VI.) Finally, aside from the detention fees set forth in Addendum B, the Transportation Contract does not even address the use, and loss, of Plaintiff's trailers by Defendant. Therefore, the services contemplated by the Transportation Contract are only related to Plaintiff's transportation of Defendant's product, not to each party's use of the other party's trailers.

Defendant contends, however, that the Transportation Contract addresses Defendant's alleged loss of Plaintiff's trailers by providing in Section IV, Paragraph 2, that "[a]ll [of Plaintiff's] equipment used in the performance of transportation functions hereunder shall at all times be under the exclusive control of [Plaintiff]." (Transportation Contract, § IV, ¶ 2.) Defendant contends that, under this language, Plaintiff–not Defendant–bears the risk of loss of any of Plaintiff's trailers in Defendant's possession. I do not agree with Defendant's interpretation of Paragraph 2 of Section IV, as I find that this language clearly refers to Plaintiff's trailers when they are in *Plaintiff's possession*. As already discussed, the Transportation Contract addresses rates that Defendant will pay for Plaintiff to haul Defendant's products. The Transportation Contract does not even address either party's use of the other's equipment, except for the reference to detention fees in

Addendum B. Furthermore, when read in context, it is clear that the language in Section IV, Paragraph 2 stating that all of Plaintiff's equipment shall remain in the exclusive control of Plaintiff is referring to when *Plaintiff is using its own trailers* to haul Defendant's products. Therefore, I do not agree with Defendant that this paragraph somehow nullifies the prior indemnification agreement between the parties as set forth in the EIA and shifts all of the risk of loss to Plaintiff. In sum, as a matter of law the subject matter of the EIA is not related to the subject matter of the Transportation Contract. Therefore, the merger clause in the 2002 Transportation Contract does not render as void the indemnification provisions in the 1996 EIA.

<u>CONCLUSION</u>

For the foregoing reasons, **IT IS RECOMMENDED** that Defendant's motion to dismiss (docket no. 6) be **DENIED**.

_____
WALLACE W. DIXON
United States Magistrate Judge

March 13, 2009